## DANIEL DOUGHERTY, EDWARD LAHEY, RICHARD BEATTY, AND J. WHELAN *v.* R. S. CREARY AND LYMAN ACKLEY.

COURTS OF EQUITY.— Courts of equity in this State, while keeping within the rules and principles on which their remedial jurisdiction is founded, will apply their jurisdiction to those new questions which are continually arising.

ABANDONMENT OF WATER AND TAILINGS PASSING FROM A MINING CLAIM.— If miners engaged in washing their mining claims with water abandon the water and tailings which pass from their mining grounds, any other persons have a right to take and appropriate the same to their own use, and their right to the water and tailings is contingent on the fact of continual abandonment; but it does not become obligatory on the persons abandoning to continue to do so, even though other persons, encouraged by the circumstance of abandonment for a time, have incurred the expense of constructing flumes to use the water and tailings abandoned.

PARTNERSHIP IN MINING.—The parties owning a mining claim as tenants in common, and engaged in working the same, are partners.

POWER OF A MAJORITY IN INTEREST TO CONTROL WORKING OF A MINING CLAIM.—

Those owning the major portion of a mining claim have the power to decide what may be necessary and proper for carrying on the business of mining, and to control the working of the claim, in case all the parties in interest cannot agree, provided that the exercise of such power is necessary and proper for the carrying on the enterprise for the benefit of all concerned.

APPEAL from the District Court, Tenth Judicial District, Yuba County.

The facts are stated in the opinion of the Court.

*Hatch & McQuaid*, for Appellants, argued that one partner had a right to an injunction to restrain his copartners from the commission or continuance of a wilful trespass tending to injure the partnership business, citing Coll. on Part., Secs. 340–344; and that the owners of the Blue Point claim and of each of the flumes were partners therein, and cited *Duryea* v. *Burt*, 28 Cal. 569; and that the members of the Cheek and Ackley and Side Hill Flumes sustained towards each other the same relation that the owners of the Blue Point claim sustained to each other. They also argued that the act of Creary and Ackley, who owned only four sevenths of the Blue Point Claim, was not the act of the Blue Point Company; and that, in the absence of special agreement, the majority of the persons composing a company, and not the larger interest, had the right to control; and cited Coll. on Part., Secs. 197, 198, and Story on Part., Secs. 123–213.

*W. C. Belcher*, and *J. O. Goodwin*, for Respondents, argued that the Blue Point Company had the right to do as they pleased with their water and tailings, and that the Side Hill Flume had no legal reason to complain because the Blue Point Company had taken their tailings and water from the flume and turned them into the Nevada Reservoir Ditch Company's flume, and that defendants must therefore be regarded as having commenced this action in the character of partners in the Blue Point claim. They also argued that the old rule in commercial partnerships where there were no articles to control, was, that the partners shared losses and profits equally, however unequal the amount of capital invested, and that, as in

mining partnerships each one shared the losses and profits according to his interest in the mine, the old rule of commercial partnerships, that a majority of voices controlled, ought not to prevail, but a majority in interest should control.

*George Cadwalader*, of counsel for Appellants, in reply.

By the Court, CURREY, C. J.:

The plaintiffs and defendants are the owners of a valuable mining claim at Sucker Flat in Yuba County, known as the " Blue Point Claim," connected with which is a flume known as the " Blue Point Flume " of about seven hundred feet in length, extending through and from such claim toward the Yuba River. The same parties also own this flume. The undivided interests of the several persons constituting the parties to this action in said claim and flume are as follows : The plaintiffs Dougherty and Lahey each own one seventh—the plaintiffs Beatty and Whalen jointly own one seventh ; the defendant Creary owns three sevenths and the defendant Ackley owns one seventh ; and these several persons, at the time this action was commenced, had been working the claim and using the flume for the purpose for more than a year and they and those under whom they hold the property had been carrying on the mining business there and using the flume in aid of the work for more than three years before then. Connected with the Blue Point Flume at the lowest end of it is another known as the " Cheek and Ackley Flume " extending from the point of connection toward the Yuba River about seven hundred feet, of which the same persons, except Beatty and Whalen, were the owners at the commencement of this suit and for three years before then had been the owners in the following undivided proportions : Dougherty, Lahey and Creary each owned one sixth, and Ackley three sixths. Connected with the last named flume at the lower end of it, is another, known as the Side Hill Flume, extending from the point of connection toward and to the Yuba River. The

same persons who owned the Blue Point Claim and Flume
were, at the commencement of this suit, and for three years
before then had been, the owners of the Side Hill Flume in
the following undivided proportions: Beatty, Whalen and
Ackley each owned one twelfth; Dougherty, two-twelfths;
Creary, four twelfths, and Lahey three twelfths. These seve-
ral flumes had, on the 30th of November, 1865, been used for
more than three years by the parties interested in the working
of said mining claim, and in washing and extracting the gold
therefrom. The gold bearing earth of the Blue Point Claim
was of a quality that required its passage through flumes of
the aggregate length of those named, in order to save and
secure the gold therein, as about five twelfths of the gold
obtained by the process was from the Side Hill Flume. Ad-
joining the Blue Point Claim is another mining claim known
as the "Union Claim," connected with and belonging to
which is a flume known as the "Union Flume," extending
from the Union Claim to the Yuba River. In its course
downward it approaches near to the lower end of the Cheek
and Ackley Flume. The defendant Creary was the principal
owner of the Union Claim and Flume on the 30th of Novem-
ber, 1865. The plaintiffs had not at that time nor when this
suit was commenced any interest therein. On the day last
named, while the Blue Point Claim was being worked by the
use of the several flumes first mentioned, the defendant Creary,
without the knowledge or consent of the plaintiffs, forcibly
severed and destroyed the connection between the Cheek and
Ackley Flume and the Side Hill Flume, and prevented the
water, freighted as it was with gold bearing earth, from pass-
ing into the Side Hill Flume, by conducting it from the Cheek
and Ashley Flume into the Union Flume. Upon discovering
what had been done the plaintiffs adopted measures by which
the connection between the Cheek and Ackley Flume and the
Side Hill Flume was restored, so that the water and gold
bearing earth was made to pass into the Side Hill Flume as it
was wont before the defendant Creary changed its course.
On the next day Creary, with a force sufficient to effect his

purpose, again destroyed the connection between the Cheek and Ackley Flume and the Side Hill Flume, and diverted the water and gold bearing earth into the Union Flume. These acts, the plaintiffs allege in their complaint, were against their will and consent, and to their great damage and irreparable injury; and that by means of the alleged wrongs so committed by the defendant Creary, and which they charge he intends to continue by a perpetual diversion of the water and earth into the Union Flume, they will be deprived of and lose their proper share of the gold of the Blue Point Claim, which would be saved to them with others interested in the Blue Point Claim, if the water were permitted to run through the Side Hill Flume as the same had run before the commission of the alleged wrongs of which they complain. The defendant Ackley refused to join with the plaintiffs in their complaint against Creary, and therefore was made a defendant.

The foregoing facts, with others, are set forth in the stating part of the complaint, followed by a prayer for the equitable interposition of the Court by injunction, to be directed to the defendant Creary, commanding and enjoining him, and his agents, servants and employés, and each and every of them, to desist and refrain from the continuance of the alleged wrongful acts complained of, and which the defendant Creary, as alleged, intended to continue; and further commanding and enjoining the same persons from interfering, in any manner whatever, with the free passage of all the waters used in working the Blue Point Claim, into and through the Blue Point, Cheek and Ackley and Side Hill Flumes, and from diverting the water into the Union Flume; and that, upon the final hearing of the cause, the injunction might be made perpetual: and the plaintiffs prayed for such other relief as might to the Court seem equitable.

The complaint was verified and filed, and the Judge of the District Court made an order that the defendants show cause, if any thay had, at a particular time and place, why the injunction for which plaintiffs prayed should not be granted. At the time and place appointed the defendants appeared, and,

for cause against the issuing of an injunction, laid before the Judge affidavits showing that the Side Hill Flume was so dilapidated and worn out as to be unfit for the use for which it was constructed. On the part of the plaintiffs, affidavits were also submitted, controverting in a great measure those of the defendants as to the condition of the Side Hill Flume, and showing that notwithstanding it was not in as good condition as when new, it was sufficient, with slight repairs, for the uses for which it was made.

The defendant Creary also submitted his own affidavit, setting forth that the Blue Point Mining Company, and the Cheek and Ackley Flume Company, and the Side Hill Flume Company were separate organizations, independent of each other, and were formed at different times, and that some time about the month of June, 1864, the Blue Point Mining Company made an agreement with the owners of the Cheek and Ackley Flume Company, and also with the Side Hill Flume Company, by which the Cheek and Ackley Company agreed to pay the Blue Point Company five dollars per day for the privilege of taking and receiving from the flume of the last named company the water and gold bearing earth and the gold therein that passed through the Blue Point Flume ; and that the Side Hill Company agreed to pay to the Blue Point Company such sum as it was reasonably worth, to wit : ten dollars a day, for the privilege of taking and receiving from the Cheek and Ackley Flume the water and the gold bearing earth and the gold therein which passed through that flume. That notwithstanding such agreements made with the flume companies, the owners of a major portion of the interests therein, respectively, wholly neglected and refused to pay the Blue Point Mining Company anything whatever, as they had agreed to do. He then states that the Blue Point Mining Company purchases the water with which to work their mining ground, and consequently have the entire management and control of the water and the gold bearing earth and the gold therein which passed out of their flume, and that at the time the affidavit was made, by an agreement existing between

the Blue Point Company and the Cheek and Ackley Company, the latter received into its flume the water and earth with the gold remaining therein from the Blue Point Flume, at and for the consideration of five dollars a day, with the right reserved to the Blue Point Company to control the water and tailings at the lower end of the Cheek and Ackley Flume. He states further that the Nevada Reservoir Ditch Company, who own the Union Flume, takes and receives the water and tailings from the Cheek and Ackley Flume by an agreement with the holders of the major part of the interests in the Blue Point Company, for which privilege the ditch company pay ten dollars per day ; and he further deposes that unless the Blue Point Mining Company can have the management and control of the water and what it bears along with it, the whole way to the river, then all work by such company will have to be suspended, as all the gold secured in their claim and flume to the foot of it pays but little more than half the expenses of working the claim ; that at divers and sundry times during the last three years the Blue Point Company had proposed and offered to buy the Cheek and Ackley and the Side Hill Flumes, or to consolidate the three companies, so as to make the interests held by any person equal in all the companies, and that all concerned in them were willing to do so but the plaintiffs Dougherty and Lahey, who for an unjust advantage to themselves refused so to do.

Each of the plaintiffs made an affidavit that no agreement, to his knowledge, was ever made on the part of the Side Hill Flume Company to pay the mining company anything whatever for the privilege of running the water and earth into and through the Side Hill Flume ; and they also severally deposed that if there ever was any agreement made and entered into at any time between any of the owners of the Blue Point Company and the ditch company, by which the Union Flume was to receive the water and earth from the Cheek and Ackley Flume, or otherwise, for ten dollars a day, or any other consideration, that then such agreement was made and entered into on behalf of the Blue Point Company by the defendants

alone, without the consent or agreement of the plaintiffs thereto, who, with the defendants, were the owners of the said mining claim.

Upon hearing the plaintiffs' motion for an injunction, and the defendants' objections thereto, the Judge, by order, refused to grant it, and from this order the plaintiffs have appealed.

### Courts of equity.

The questions presented are perhaps novel in a Court of equity, but we are not to decline their consideration for that reason. It is the common experience of the Courts of this State to be called upon to deal with new and novel combinations of circumstances which are often extremely complicated and embarrassing. Still it is the duty of the Court, as a Court of equity, while keeping within the rules and principles on which its remedial jurisdiction is founded, to adapt its course of proceeding, as far as possible, to the existing state of things, and to apply its jurisdiction to all those new cases which from the diversified transactions among men, are continually arising, and to administer justice and enforce right for which there is no remedy save in a Court of equity. (*Taylor* v. *Salmon*, 4 Myl. & Cn., 141 ; *Walworth* v. *Holt*, Ib. 635.)

The several companies, that is the Blue Point Mining Company, the Cheek and Ackley Flume Company, and the Side Hill Flume Company, seem to be as companies independent of each other, though many of the members of each are members of the others. The controversy which has arisen in this case is not between any two or more of the companies as distinct organizations, but between and among members of the several companies ; and the first question to be ascertained is as to the right of the Blue Point Mining Company as an individual, to control for its own use and profit the water and tailings of its mine and mining operations ; and if it be determined that such company has the right so to do, the order of the Court refusing to grant an injunction must be affirmed as a matter of course.

38

It appears that prior to the year 1856 the miners of the locality which counsel denominate the Blue Point Basin, but which is now more commonly known as the Blue Point Mining Claim, were in the habit of discharging the water and earth from their mining claims above the head of a certain ravine through which the Cheek and Ackley Flume now passes. In this condition of things Cheek and Nutting, who had no interest in the mining claims in the basin, constructed the flume now known as the Cheek and Ackley Flume, as early as 1856, commencing at the head of the ravine and extending down its course about seven hundred feet, for the purpose of taking up the waters and tailings at that date abandoned by the miners of the basin, and passing the same through their flume for their own profit. From that time to the commencement of this suit this flume was employed for the purpose for which it was originally constructed, and its owners have maintained an organization separate and distinct from the other companies named, sharing the expenses, losses and profits of their enterprise in the ratio of their respective interests therein. In 1858 the Side Hill Flume was constructed for the purpose of taking up the earth and water which had passed through the Cheek and Ackley Flume, the head of which was at the foot of the last named flume, and from that point it extended to the Yuba River.

### Abandonment of tailings and water.

In 1862 the miners of the basin consolidated their claims under the name of the Blue Point Mining Company, and from that time became the successors in interest of the rights of the miners whose claims were thus consolidated in a single company. So long as the miners of the basin and the Blue Point Mining Company abandoned the water and tailings which passed from their mining grounds, the Cheek and Ackley Flume Company had the right to take and appropriate the same to its own use, and upon the passage of the water and earth through that flume the Side Hill Flume had the right to take and appropriate what so passed through the Cheek

and Ackley Flume to its own use ; but the respective rights of these flume companies was contingent and dependent on the fact of continual abandonment of the waters and tailings by the mining company to whom the same belonged. If those owning and working the mining ground elected to abandon their property at a particular point and for a particular length of time, it did not therefore become obligatory upon them to continue to do so, even though the flume companies, encouraged by the circumstance of abandonment for a time, had incurred the expense of constructing flumes for the purpose of obtaining a profit from the water and earth so abandoned. When the Cheek and Ackley and the Side Hill Flumes were constructed their owners assumed the risk of loss by the miners ceasing to abandon the water and tailings from their mining grounds, and they cannot justly complain because the Blue Point Mining Company adopt means by which it may obtain the full benefit of its mining enterprise.

The plaintiffs, as members of the Blue Point Mining Company, are interested as well as the the defendants in having that company make large profits by the effectual working of the mine ; and if it requires flumes of great extent to work the same to advantage, they are concerned as well as the defendants in employing the means which shall be adapted to the end to be attained. They cannot be allowed to interpose a perpetual barrier to the profitable working of the mining ground by the company who own it, because they have an interest as members of another enterprise, depending for its success upon profits which the mining company is entitled to, if it chooses to reduce the same to beneficial account.

From the case before us it appears that the defendants own four sevenths of the mining ground and water used in its working, and that the plaintiffs own the balance, and that the diversion of the water and gold bearing earth from the Cheek and Ashley Flume to the Union Flume was, at the instance of the defendants, for the benefit of the company. There is no complaint that ten dollars a day, which the Reservoir Ditch Company pay to the mining company, is not a just

consideration for the water and tailings which is made to pass into the Union Flume; but the real ground of the plaintiffs' complaint is that, as principal owners of the Side Hill Flume, they suffer by the diversion, which deprives them of the profits which they had been accustomed to obtain by running through the Side Hill Flume the water and gold bearing earth as discharged from the Cheek and Ackley Flume.

*A majority in interest in a mining claim may control.*

The parties constituting the Blue Point Mining Company are the owners of its property, as tenants in common, and in the working of the mine they are to be considered as partners. (*Duryea* v. *Burt*, 28 Cal. 569.) As the property can only be used in entirety, it is indispensable to the conducting of the business of mining that those owning the major portion of the property should have the power to control, in case all cannot agree, otherwise the work might become wholly discontinued. As mining partnerships are not usually founded on the *delectus personæ*, the powers of the individual members of the concern are much more limited than are the powers of the individual members of a purely commercial or trading partnership; and for this reason the conduct of the partners holding the major portion of the property in a mining concern is to be most jealously scrutinized when complaint is made by the minority in interest of oppression. It might and often would work great inconvenience and damage to the minority in interest of a mining partnership, if the majority were allowed to do as they might deem to their own advantage, regardless of the rights and interests of the minority. But notwithstanding the danger of the abuse of power in such cases, what may be necessary and proper for carrying on the business of mining for the joint benefit of all concerned must be determined by those owning and holding in the aggregate the major part of the property. And if the powers which are thus attempted to be exercised are not necessary and proper for the success of the enterprise, those whose interests are imperilled or disas-

trously affected thereby have the right to resort to the Courts for redress and protection.

If the defendant Creary has obtained an unjust advantage for himself by disposing of the water and tailings to the ditch company, in which he is largely interested, at ten dollars a day, the plaintiffs may have their suit to redress the wrong; but it does not appear by the case, as found in the record before us, that the compensation which the ditch company pays is not ample and adequate.

The order appealed from is affirmed.