[Civ. No. 12807. Second Appellate District, Division Two.—
March 28, 1941.]

JOHN DUNNER, Appellant, v. MYRON L. HOOVER,
Respondent.

Lester V. Peterman for Appellant.

A. D. Orme for Respondent.

MOORE, P. J.—This action was instituted by plaintiff to enforce the rescission of a contract executed by plaintiff and defendant September 30, 1938. The ground alleged as the basis for rescission was fraud in that defendant never intended to perform any of the terms and conditions of the contract which provided for the sale to defendant by plaintiff of a milk route and certain equipment, including a truck, subject to an indebtedness in the sum of $434.05, certain bottles and cases in use by the Sunny Brook Dairy, a list of a sufficient number of customers of that dairy or others to enable defendant to sell 150 quarts of milk per day; defendant to purchase all milk sold by him from plaintiff at one cent per quart more than the prevailing wholesale market price, which by the terms of the contract was fixed at 5 cents, 6½ cents or 7 cents per quart, depending upon the butterfat content of the milk; defendant to assume to pay the debt due on the truck and to pay plaintiff $25 per month until the sum of $300 had been paid, at which time plaintiff should execute a bill of sale for the route and equipment; defendant to build up the business by proper service to his patrons and to account daily to plaintiff for sales made.

Prior to and on September 30, 1938, plaintiff owned and operated a dairy (known as Quality Dairy) and delivered milk, under the trade name of ''Quality Dairy'' over a route in the city of Pasadena and environs. At the same time one Olmstead was the owner of a milk route on which he sold milk under the trade name of ''Sunny Brook Dairy'' and of

a Ford truck, and of bottles and cases described in the contract. Olmstead had declined to sell to defendant the Sunny Brook route and the personalty he used in delivering the milk but he did sell the route and equipment to plaintiff for $300, and plaintiff thereupon agreed to sell to defendant. Following the execution of the contract and on the same day the parties met with Olmstead at plaintiff's home, at which time they consolidated and divided the territory in which milk had been theretofore sold by plaintiff and Olmstead. They designated Orange Grove Avenue the dividing line of the two divisions, defendant choosing for his territory the area south of Orange Grove Avenue. However, defendant did not by his acceptance of such territory release plaintiff from his obligation to deliver him a sufficient number of names of patrons who would purchase 150 "points" i. e., quarts of milk, daily. The customers on the list of names delivered to defendant purchased only 85 quarts. The events that followed appear in outline in the complaint.

The complaint alleges that at the time of the agreement plaintiff owned the personal property described in the quoted contract including a list of the names of customers and patrons, who resided in Pasadena and neighboring cities, who purchased from plaintiff under the trade names of Quality Dairy and Sunny Brook Dairy; that defendant falsely promised to perform all the covenants and conditions of the contract; that by reason of plaintiff's reliance upon such promises he executed the writing, delivered to defendant the list of names of those who purchased milk from plaintiff on defendant's route, together with the route book, cases and caps; defendant's lack of intention to perform; his failure to pay the monthly installments in November, December, January and February, 1939; that defendant purchased milk for about one month from plaintiff as agreed, then purchased but a small quantity and subsequently none; that the total amount of such purchases was of the agreed value of $394.68 on which defendant paid the sum of $123; that defendant now purchases milk from dealers other than plaintiff and delivers milk to customers on plaintiff's route in bottles with the name "Quality Dairy" on them, and represents to his customers that the milk he sells to them is "Quality Dairy Milk"; that he is the owner of the Quality Dairy; and that defendant purchases merchandise from merchants in Pasadena and Los Angeles on the

credit of plaintiff. The allegations are sufficient to constitute a cause of action in rescission, including the allegation of his service on defendant of notice of rescission and cancellation of the agreement. By his prayer he demands that defendant be enjoined from selling milk under the names of Quality Dairy and Sunny Brook Dairy, and from selling any milk purchased from dealers other than plaintiff and for the recovery of the sum of $271.68 due for milk purchased from plaintiff and for $100 as installments due on the contract of purchase.

The answer denied the allegations of the complaint and in a separate paragraph alleged that defendant had faithfully complied with all of the terms and conditions of the agreement but that plaintiff had failed to perform his part; had failed to deliver the names of a number of customers as promised; has constantly interfered with defendant by making collections from defendant's customers and has caused defendant to lose a number thereof; that while collecting from defendant's customers, plaintiff has failed to account to defendant either by credit or cash; that defendant has paid plaintiff directly or indirectly by cash or earned credits a sum over and above the amount owing plaintiff under the terms of said agreement. The prayer of the answer was that an accounting be required of plaintiff for all money collected and all credits earned, that the number of customers and names and addresses thereof to which defendant is entitled be determined, that the court adjudge which party is indebted to the other, that the rights of the respective parties to the contract be specifically determined, and that plaintiff be enjoined from interfering with any of defendant's patrons.

The court found that all of the allegations of the complaint are not true except that the contract was executed, and except that plaintiff delivered to defendant a list of names of customers on the route sold but that those were an insufficient number to comply with the contract in that plaintiff failed to deliver the sum of 65 ''points'', having delivered only 85 ''points'' instead of 150 ''points'' agreed upon; that the ''milk bottles and caps bearing the names of Quality Dairy and Sunnybrook Dairy belonged to defendant and not to plaintiff.''

From the findings the court decided that the notice of rescission was void; that defendant was entitled to recover

the sum of $256.16; that he is entitled to 65 additional "points" of milk. The judgment followed the decision.

The grounds of appeal are: (1) That it was error to order specific performance of a contract for the sale of personalty; (2) that it was error to award specific performance in favor of defendant in the absence of either allegation or finding that defendant had performed all of the conditions and covenants required of him; (3) that it was beyond the scope of the powers of the referee named by the court to determine the extent of the damage suffered by defendant; and (4) that it was error to deny plaintiff's motion to amend his complaint.

1. It is a rule of ancient origin and of continuous practice that equity will not decree specific performance of a contract for the sale of personal property except in rare cases where the remedy at law is not adequate. (58 C. J. 852.) This action does not come within the exceptions. The plaintiff failed to make delivery of the property promised by his agreement in the one particular, to wit: the names of sufficient customers whose purchases of milk would enable defendant to make sales to them of 150 quarts daily. It was competent for defendant to make proof of the value of the names of patrons of the milk route not delivered to him and recover his damages. (*Emirzian* v. *Asato,* 23 Cal. App. 251 [137 Pac. 1072]; *Richfield Oil Co.* v. *Hercules Gas Co.,* 112 Cal. App. 431 [297 Pac. 73].) It is presumed that the breach of such an agreement can be relieved by pecuniary compensation. (Civ. Code, sec. 3387.)

2. In order to entitle a litigant to the specific performance of a contract, he must first allege an enforcible contract and his passing of an adequate consideration. The requirements for a complaint for specific performance are applicable to the counterclaim. It must allege the fairness of the contract and that it is reasonable. (Civ. Code, sec. 339; *Young* v. *Matthew Turner Co.,* 168 Cal. 671, 675 [143 Pac. 1029]; *Buckmaster* v. *Bertram,* 186 Cal. 673 [200 Pac. 610].)

While the allegations of the answer are sufficient to enable the court to award damages, it does not contain allegations which are necessary to a pleading seeking specific performance. "Even if the allegations were to be considered as those of a cross-complaint, still the pleading could not be sustained, as it wholly fails, standing alone, to state facts sufficient to constitute an independent cause of action."

(*Bandy* v. *Westover*, 200 Cal. 222, 231 [252 Pac. 593].)
Defendant's affirmative allegations do not state that the obligations imposed upon the plaintiff can be reasonably performed by plaintiff or that the terms are reasonable or just.
(*Bandy* v. *Westover, supra.*) Having failed to allege that he paid or has offered to pay the purchase price of the property, to that extent he has failed to allege a cause of action for specific performance. (*Cates* v. *McNeil*, 169 Cal. 697, 707 [147 Pac. 944].) Neither does the answer set forth any reasons for defendant's inability to perform the covenants required of him or that his performance was prevented by the acts of the plaintiff. Neither do the findings specifically declare that defendant's failure to pay the purchase price of the property was rendered impossible by the acts of plaintiff.

3. In spite of the inadequacy of the defendant's pleading to warrant the decree of specific performance, the trial court, after hearing testimony of the two litigants and Mr. Olmstead, referred the controversy to one C. S. Anderson. The referee assumed judicial powers and undertook to compute the extent of the loss of profits on the part of the defendant. In doing this, he considered evidence not only of the parties and of such books as they kept but also he took the testimony of previous customers of plaintiff as well as statements from the customers of defendant, and he derived the conclusion that defendant was entitled to a credit of $376.68 as loss of profits on his inability to sell 65 points daily for a period of 129 days, based upon the profit of 4½ cents per quart to defendant. Without discussing his errors in computation, it is sufficient to observe that there is no authority or evidence to warrant his allowance of 4½ cents profit on sales not made, or to hear evidence and make findings with reference to the number of customers to whom defendant delivered milk, the number of customers ordered by plaintiff not to pay defendant, or to consider the *ex parte* evidence of customers as to the acts of plaintiff in violation of the agreement and to formulate a decision for the court as to the amount of plaintiff's debt to defendant.

A referee appointed under circumstances such as those described has no such power. The first subdivision of Code of Civil Procedure, section 639, authorizes a referee "to hear and decide the whole issue" when the trial of an issue of fact

requires the examination of a long account. There was no long account involved in this transaction. There was, therefore, no authority to direct him to hear and decide the whole issue; and the court did not pretend to exercise such authority.

The second subdivision of the same section merely authorizes the court to direct a reference ''when the taking of an account is necessary for the information of the court''. But since defendant stood upon a breach of the contract and not upon a performance thereof, the taking of an account was wholly unauthorized. To take an accounting between parties is in order only when both parties confirm the contract and demand their shares of profits or of the capital investment, or both. It is not proper in case of the breach of an agreement to convey personal property.

The judgment is reversed.

Wood, J., and McComb, J., concurred.