[Civ. No. 3321. Fourth Dist. June 21, 1944.]

FRED KORABEK, Respondent, v. WEAVER AIRCRAFT CORPORATION (a Corporation) et al., Appellants.

Dempster McKee and Edgar A. McNulty for Appellants.

Sloane & Steiner for Respondent.

GRIFFIN, J.—In an amended complaint plaintiff seeks declaratory relief and alleges that prior to September 30, 1940, plaintiff and defendant Weaver were interested and active in procuring the incorporation of the Weaver Aircraft Corporation; that thereafter plaintiff and all of the defendants above named became interested and active in procuring assets and working capital for said corporation; that plaintiff furnished his services and ability in arranging for the incorporation and in negotiating for the "J. L. Weaver 'License Agreement Weaver Airplane Motors' " for the benefit of such corporation, and advanced the sum of $400 in cash for expenses of incorporation and procuring permit and issuance of stock, payment of franchise tax, etc.; that on September 30, 1940, the Weaver Aircraft Corporation was duly incorporated and organized.

Defendants' answer to the amended complaint sets out a "Memorandum of Promotion Agreement" signed by the four promoters on October 21, 1940. It reads:

"That the undersigned, J. L. WEAVER, TOM KECK, FRED KORABEK and ROBERT R. DUNN, JR., have been engaged and are still associated in promoting a California corporation now holding a charter under the name of Weaver Aircraft Corporation; that they have respectively advanced things of value, including cash, development ideas, personal services and ex-

perience, to the welfare of said corporation and for the benefit of its future stockholders, and that they, and each of them, will continue to use their best efforts, aside from their other occupations, and aside from positions in said corporation, to put it on a sound financial and production basis.

"In view of the contribution by the respective parties heretofore made and expected of them hereafter, said parties have agreed that such portion of the capital stock of said corporation as may be allotted and authorized as promotion stock shall be apportioned amongst them in the following ratio:

| | |
|---|---|
| "J. L. Weaver | 50% |
| "Tom Keck | 12½% |
| "Fred Korabek | 25% |
| "Robert R. Dunn, Jr. | 12½% |

"Upon issuance of any and all promotion stock, the same shall be made subject to a voting trust on behalf of the owners thereof upon the usual conditions and for a term of years.

"It is contemplated that 49,500 shares of the original block of 99,000 shares to be issued shall be set apart as promotion stock; but whether the same be more or less than the contemplated amount, division thereof shall be made in the proportions specified and stock shall be issued accordingly to the undersigned, their heirs, assigns, or legatees.

"It is contemplated that Tom Keck and Robert R. Dunn, Jr. will receive 5,000 shares of the remainder of such 99,000 shares as payment for which the sum of $5,000 now posted by them shall comprise full consideration. Said sum is to be available for corporation requirements pending receipt of proceeds from general stock sales, but shall be drawn only upon checks signed by said Keck and Dunn as officers of the corporation. Until authorized issuance of such 5,000 shares upon such consideration, said sum of $5,000.00 shall constitute a loan payable by the corporation sixty days after demand."

On October 22, 1940, the defendant corporation, through its board of directors, adopted a resolution which reads in part as follows:

"It is Further Resolved That this corporation accept and take advantage of the services heretofore rendered and arrangements heretofore made by John L. Weaver, Tom Keck, Robert R. Dunn, Jr., and Fred Korabek.

"It is Further Resolved that the fair value to the corporation in monetary terms for such 'License Agreement Weaver

Airplane Motor' and such services and arrangements, is the sum of $49,500 and that upon obtaining proper authority therefor 49,500 shares of the capital stock of this corporation to be issued to said J. L. Weaver, Tom Keck, Robert R. Dunn, Jr., and Fred Korabek in consideration of the matters hereinabove recited, such shares to be accepted by them in lieu of the 49,500 shares and the 7,000 shares referred to in the resolution of the board of directors of this corporation adopted October 7, 1940, and to constitute full payment of all obligations of the corporation to such persons, and either of them.''

On October 22, 1940, the following agreement was signed by plaintiff Korabek and defendants Weaver, Keck and Dunn:

"DESIGNATION OF SHARE ALLOTMENT

''The undersigned hereby agree upon and request authority for issuance of stock of Weaver Aircraft Corporation as follows:

''Promotion stock:

| ''To John L. Weaver | 24,750 shares |
| Fred Korabek | 12,375 " |
| Tom Keck | 9,900 " |
| Robert R. Dunn, Jr. | 2,475 " |

In satisfaction of $5,000 advance to the corporation Tom Keck 4,000 shares; Robert R. Dunn, Jr., 1,000 shares.''

On October 24, 1940, pursuant to application, the Commissioner of Corporations issued to Weaver Aircraft Corporation a permit. It recites that the corporation was organized for the purpose of engaging in the business of manufacturing and selling airplane parts etc.; that the corporation will receive a license from Weaver to manufacture and sell an airplane engine known as the ''Weaver Pancake Airplane Motor''; that Weaver filed application for letters patent. It then authorizes the issuance of 49,500 shares of promotion stock as consideration for the license agreement described in the application and for promotional and other services rendered by the promoters for applicant and reserves the right to applicant to issue to them under future permits additional shares when and as authorized by the commissioner, as final consideration for said license agreement and for services. Additional conditions were imposed, namely, that none of the shares shall be sold or issued but shall be placed in escrow

pending further order of the commissioner; that they shall execute an agreement with the corporation to waive any right to participate in any distribution of assets (except dividends) while said shares are held in escrow and until all other stockholders who have paid cash or its equivalent for their shares shall have received the return of the full amount of the purchase price. The amended complaint then alleges that thereafter the defendant corporation sold and issued to Keck and Dunn an aggregate of 5,000 shares and sold additional shares, at par, for purposes recited in the application. Plaintiff then alleges that all conditions of the permit have been complied with except that defendants failed and refused to issue certificates evidencing the shares of stock to which he is entitled; that the corporation, at all times mentioned, was under the control of Weaver, Keck and Dunn, as a majority of the board of directors; and that an actual controversy exists as to the legal rights and duties of the parties and as to the promotion stock. Plaintiff then prays for a declaration of his rights and that the defendant corporation be required to issue to plaintiff 12,375 shares and deposit them with the escrow holder designated, in accordance with the terms of the permit, and asks for general relief.

Defendants admit generally the allegations of plaintiff's complaint, admit the execution of the instruments above mentioned, and in addition thereto allege that the Weaver Aircraft Corporation, on October 7, 1940, adopted a further resolution as follows:

"RESOLVED that the officers of the corporation make immediate application to the Division of Corporations, Department of Investment, State of California, for leave to issue 99,000 shares of capital stock of Weaver Aircraft Corporation, such shares to be issued subject to the approval of the Corporation Commissioner for the following purposes:

"49,500 shares to J. L. Weaver, Tom Keck, Robert R. Dunn, Jr., and Fred Korabek, in consideration for their services rendered and to be rendered in behalf of the corporation and its affairs;

"7,000 shares to J. L. Weaver in exercise of the option to acquire all manufacturing and distribution rights of Weaver Pancake Airplane Motor;

"42,500 shares to general purchasers at $1.00 per share, cash."

They admit that the corporation sold and issued to Keck and Dunn 5,000 shares and that the corporation issued 23,710 additional shares; and admit that the license agreement described in the application was executed, filed and recorded in the patent office. As a defense to plaintiff's amended complaint they allege that on October 21, 1940, the Weaver Aircraft Corporation entered into a separate "Fiscal Agency Agreement" with the plaintiff reciting that the corporation contemplates issuance of 42,500 shares of its capital stock, at a par value of $1.00 per share to the general public; that the corporation is in need of the services of an agent; that said Fred Korabek, being experienced, qualified and licensed for such purposes, undertakes to sell the same promptly to the public and bear all expenses in connection therewith; that as compensation therefor the corporation will pay him as said agent a commission of 15 per cent with certain exceptions. Exclusive rights of such sales were given him for a period of six months, but in the event that during such period he did not produce sales to the satisfaction of the directors of the corporation they might appoint another sales agent on like terms. It is then alleged in the answer that as part of the consideration for the issuance to the plaintiff of any promotion stock, he was to perform all of the terms and conditions of the fiscal agency agreement; that plaintiff sold only 3,635 shares of the capital stock of the corporation and that by reason of his failure to make sales in the amount agreed upon the corporation had to borrow large sums of money to carry on its business and that they subsequently, on December 30, 1940, adopted a resolution cancelling his authority as fiscal agent, to take effect January 6, 1941; and that the plaintiff failed to comply with the terms of the "Memorandum of Promotion Agreement" above mentioned.

The trial court then found that on October 22, 1940, the corporation, *"for valuable consideration received by it,"* promised and agreed to issue to plaintiff and the other defendants 49,500 shares of its capital stock as promotion stock, upon approval of the Commissioner of Corporations; that on October 22, 1940, *"for valuable consideration"* the parties agreed upon a division of the 49,500 shares, as indicated in their written agreement; that the Corporation Commissioner issued to the defendant corporation its permit as above described; that the conditions of said permit have been fully

complied with and that the corporation selected and designated an escrow holder approved by the commissioner; that thereafter the corporation sold and issued to Keck and Dunn 5,000 shares, and sold and issued additional shares at par for cash in the amount of 23,710; that the corporation has failed to issue any of the 49,500 promotion shares referred to in the permit although it is now entitled to issue such promotion shares in the amount of 28,710; that plaintiff has rendered to said corporation and to said individual defendants the full consideration entitling him to 25 per cent of the promotion stock now issuable and hereafter to become issuable; that the corporation is under the control of defendants Weaver, Keck and Dunn, as a majority of the board of directors thereof. The court then concluded that the corporation is authorized and obligated to issue 28,710 shares of promotion stock; that 7,177½ shares thereof should be issued forthwith in the name of Fred Korabek and the certificate thereof should be placed in escrow pursuant to the terms of the permit; that whenever said corporation, in accordance with the terms of such permit, is authorized to issue additional shares of promotion stock it should issue the same and that 25 per cent thereof should be issued in the name of plaintiff and deposited with the escrow agent.

From this judgment defendants appeal.

In the opening brief defendants raise only two questions. It is first claimed that the form of judgment is in effect either a mandatory injunction or a decree for specific performance, and that therefore the trial court is not authorized, upon the showing that by contract a person is entitled to certain shares, to require, by mandatory provisions of the judgment, the issuance of such shares; second, that plaintiff is not entitled to specific performance of a contract to transfer corporate stock, when there is no pleading or proof that the breach of such contract cannot be adequately compensated for in damages or in the case where such shares would give control and there is no other stock available. (Citing Civ. Code, § 3422; Code Civ. Proc., § 526; *McGarvey* v. *Hall*, 23 Cal. 140; *Wehen* v. *Lundgaard*, 41 Cal.App.2d 610 [107 P.2d 491]; *Dunner* v. *Hoover*, 43 Cal.App.2d 753 [111 P.2d 737]; and *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [55 P. 713, 69 Am. St.Rep. 17, 43 L.R.A. 199].) The cases cited state that as a general rule equity will not decree specific performance of a contract respecting personal property. Each case cited,

however, recognizes that there are exceptions to the general rule where the remedy at law is not adequate. (Civ. Code, § 3384. (It likewise appears in some of the cited cases, that by reason of the provisions of section 3387 of the Civil Code a presumption prevails in cases of a contract for the transfer of personalty that money damages will provide adequate compensation for a breach.

In *Krouse* v. *Woodward*, 110 Cal. 638 [42 P. 1084], cited by defendants, the court held that specific performance of a contract for the return of corporate stock will be decreed if there is no other stock available or if the stock has no market or ascertainable value and it was purchased for investment with a view to anticipated increase in value.  ██  It is the general rule that the jurisdiction of a court of equity to decree specific performance depends upon the question whether the breach complained of can be adequately compensated in damages, and of course a party who relies upon an exception to a general rule must state in his pleadings the facts which bring his case within it. (*Senter* v. *Davis*, 38 Cal. 450; *Dougherty* v. *Creary*, 30 Cal. 290 [89 Am.Dec. 116].) The cases where a delivery of stock is compelled, instead of money damages for its withholding, are almost innumerable, and courts of equity have never hesitated to compel a transfer of stock held by a person in trust for another. (*Senter* v. *Davis, supra; Treasurer* v. *Commercial Coal Mining Co.*, 23 Cal. 390.)
██  The facts of the last-cited case are so similar to the facts in the present case that we adopt the reasoning there expressed and the conclusion there reached. It is there said, quoting from Justice Story, in his work on Equity Jurisprudence (vol. 2, § 717):

"And the true reason why a contract for stock is not now specifically decreed, is, that it is ordinarily capable of an exact compensation. But cases of a peculiar stock may easily be supposed, where courts of Equity might still feel themselves bound to decree a specific performance, upon the ground that from its nature it has a peculiar value, and is incapable of compensation by damages. Indeed, it has been thought, that on contracts for stock a bill ought now to be maintainable generally in equity for a specific delivery thereof, upon the ground that a Court of Law cannot give the property, but can only give a remedy in damages, the beneficial effect of which must depend upon the personal responsibility of the party."

Our Supreme Court has recently enunciated the rule that "in giving declaratory relief a court has the powers of a court of equity." (*City of Los Angeles* v. *City of Glendale,* 23 Cal.2d 68, 81 [142 P.2d 289].)

■ The facts of the instant case come well within the exceptions to the rule as stated in *Tillotson* v. *Findley,* 87 Cal. App. 654, 661 [262 P. 438], as follows:

"Respondent claims that plaintiffs have mistaken their remedy in that they should have proceeded in an action in damages for breach of covenant to convey personal property. Counsel correctly states the law that 'in general a court of equitable jurisdiction will not decree the transfer of personal property which has a market value and no special or unique value.' But the record reveals that this company, at the time this case was tried, was a struggling corporation with its success or its degree of success or failure as yet unproved. The facts in the case do not bring it under the principle stated in section 3387 of the Civil Code."

The stocks referred to in the agreement in the instant case were of undeterminable value and before they were marketable, many conditions attached. The facts of the instant case come well within the exception above stated. (See also *Fleishman* v. *Woods,* 135 Cal. 256, 260 [67 P. 276].)

■ It has been well established in this state that if the facts alleged in the pleadings and those proved are sufficient to bring a case within the exception and show inadequacy of legal remedy, that is enough. (*Wait* v. *Kern River Mining etc. Co.,* 157 Cal. 16, 23 [106 P. 98].) The pleadings and facts established in the present case are sufficient to authorize the judgment given. The cases cited sufficiently dispose of the two questions presented in the opening brief. ■ Appellants' closing brief, due to the untimely death of Dempster McKee, Esq., able counsel for appellants, was prepared by other counsel. In it, the additional contention is made that there was no consideration passed to the corporation for the contract for delivery of the promotion stock; that there was no consideration given to the corporation under its resolution agreeing to deliver that stock, and that therefore the agreement was unenforceable in this action for declaratory relief. It is argued that according to the weight of authority, a corporation is not under any liability to pay for services rendered or expenses paid or incurred by the promoters in bring-

ing it into existence, unless the charter or statute law otherwise provides, or unless the corporation, after it is formed, and for a sufficient consideration promises or covenants to pay therefor; and that a corporation should not be held bound in equity to deliver stock to a person unless the legal obligation so to do can be clearly shown, citing *Rockford Rock Island, etc. Ry.* v. *Sage*, 65 Ill. 328 [16 Am.Rep. 587]; *Biggart* v. *Lewis*, 183 Cal. 660 [192 P. 437]; *Pennell* v. *Lothrop*, 191 Mass. 357 [77 N.E. 842]; Williston on Contracts, revised ed., 893 et seq.; and 18 Corpus Juris, Secundum, p. 547, sections 144, 145. It is argued that the preceding authorities in summary hold that before a promoter can recover from a corporation for services performed prior to its corporate entity, he must plead and prove the existence of two binding agreements, one created before the corporate existence, and second, the agreement of the corporation, for a consideration, to compensate the promoter for his services.

The evidence discloses, that mostly through plaintiff's efforts as a promoter, the corporation secured the exclusive license rights to "Weaver Pancake Airplane Motors," and "... options, commitments for valuable machinery and equipment ... the services of skilled mechanics" arranged for, and tentative "orders for airplane parts and accessories" and "secured a valuable lease for the plant." The corporation accepted and took advantage of them and placed a monetary value thereon of $49,500. In its resolution it recited all of these facts and "in consideration of the matters hereinabove recited" agreed to deliver the shares of promotion stock of the corporation in accordance with the permit to be thereafter issued. Plaintiff has complied with all of its terms. The resolution itself recites that a consideration was given.

Ordinarily a corporation, in the absence of any countervailing proof, is bound by the facts recited in its resolutions. (*Purser* v. *Eagle Lake L. & I. Co.*, 111 Cal. 139 [43 P. 523].) Under sections 1614 and 1615 of the Civil Code a written instrument is presumptive evidence of a consideration and the burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it. (*Toomy* v. *Dunphy*, 86 Cal. 639 [25 P. 130]; *Creditors' Union* v. *Lundy*, 16 Cal.App. 567 [117 P. 624].)

In the instant case lack of or failure of consideration was not established. The trial court found, upon sub-

stantial evidence, that the corporation's agreement to issue the stock to plaintiff was for "valuable consideration." It was not conditioned upon plaintiff's fulfillment of the "Fiscal Agency Agreement" or any other agreement. That finding, therefore, cannot be disturbed on appeal.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied July 19, 1944, and appellants' petition for a hearing by the Supreme Court was denied August 17, 1944.